UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREW M., | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:23-cv-1099 (SDV) |
| | : | |
| KILOLO KIJAKAZI, | : | |
| | : | |
| *Defendant*. | : | |

## RULING ON PLAINTIFF'S MOTION TO REVERSE DECISION OF COMMISSIONER AND DEFENDANT'S MOTION TO AFFIRM

Plaintiff appeals from the administrative decision of the Commissioner of the Social Security Administration denying his application for a period of disability and disability insurance benefits. For the reasons below, plaintiff's Motion to Remand, ECF 17, is DENIED and the Commissioner's Motion to Affirm, ECF 23, is GRANTED.

### A. LEGAL STANDARDS

#### 1. Disability and eligibility

A claimant is disabled under the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be eligible for Title II disability insurance benefits, the claimant must establish the onset of disability during the period in which he or she was insured based on quarters of qualifying work. 42 U.S.C. § 423; *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).

**2. Commissioner's five-step review**

The Commissioner of Social Security is authorized to make findings of fact and decide disability applications, *see* 42 U.S.C. § 405(b)(1), in accordance with the five-step sequential evaluation process provided in 20 C.F.R. § 404.1520.  (1) First, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity.  (2) If not, the Commissioner determines whether the claimant has a medically determinable impairment or combination of impairments that are "severe," meaning that it "significantly limits" the claimant's physical or mental ability to do basic work activities.  (3) If the claimant has a severe impairment or combination of impairments, the Commissioner evaluates whether, based solely on the medical evidence, the claimant has an impairment that "meets or equals" an impairment listed in Appendix 1, Subpart P, No. 4 of the regulations (the "Listings") and that either is expected to result in death or has lasted or will last for at least 12 months. [1]  If so, the claimant is disabled.  (4) If not, the Commissioner determines whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his or her past work. [2]  (5) If not, the Commissioner determines whether there is other work in the national economy which the claimant can perform in light of his or her RFC, age, education, and work experience.  *See* 20 C.F.R. § 404.1520.  The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden of proof on the final step.  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

---

[1] *See* 20 C.F.R. § 404.1509 (durational requirement).

[2] Residual functional capacity is the most a claimant can do in a work setting despite his or her limitations.  20 C.F.R. § 404.1545.

The Commissioner's authority to make these findings and decisions is delegated to an administrative law judge ("ALJ"). *See* 20 C.F.R. § 404.929. A claimant may request review of an ALJ's decision by the Appeals Council. *See* 20 C.F.R. § 404.967. If the Appeals Council declines review or affirms the ALJ's decision, the claimant may appeal to the United States District Court. 42 U.S.C. § 405(g).

### 3. Court's review on appeal

A district court reviewing the Commissioner's final decision is performing an appellate function, *see Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981), and has the power to affirm, modify, or reverse the Commissioner's decision based on its review of the briefs and the administrative record. *See* 42 U.S.C. § 405(g). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

## B. BACKGROUND

### 1. Procedural History

In January 2022, plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging an onset date of November 1, 2020. R. 195-96. The claim was denied after initial review and on reconsideration, and plaintiff requested a hearing. R. 94, 104, 123-24. On August 25, 2022, ALJ Eskunder Boyd conducted a video hearing at which plaintiff and a vocational expert testified. R. 44-85. On October 12, 2022, the ALJ issued a written decision denying plaintiff's claims. R. 27-39. Plaintiff's request for review was denied by the Appeals Council, R. 2-3, and plaintiff filed this action on August 18, 2023.

**2. Work history**

Plaintiff was 29 years old at the alleged disability onset date of November 1, 2020. He has past relevant work as a personal fitness trainer. R. 53. He also worked occasionally as an Uber driver. R. 52-53. He earned a bachelor's degree online. R. 52. As of the hearing date, plaintiff was on a five-week trip to Montana, where he drove with his girlfriend to go hiking. R. 51, 55, 58-59.

**3. Overview of mental impairments** [3]

The Court assumes familiarity with the medical record and hearing testimony. Plaintiff's primary impairments are depression and OCD, as well as inattentive ADHD. R. 447, 449. He has had these conditions since childhood. R. 447. His symptoms have persisted despite trying various SSRIs, antipsychotic augmentation, and cognitive behavioral therapy, but he had a positive response to ketamine therapy in Montana in 2019 and again in Connecticut between September 2021 and January 2022. R. 448-49, 434-35, 488, 495, 516, 607. One month before the alleged disability onset in November 2020, his medication regimen included quetiapine, pramipexole, fluvoxamine, dextroamphetamine-amphetamine (Adderall), and alprazolam (Xanax). R. 332. As of two months before the August 2022 hearing, which is the most recent treatment note in the record, he was taking the same medications except for pramiprexole. R. 615.

Regarding symptoms, treatment notes from Bridger Psychiatric Services in Montana showed relative stability between January 2020 and May 2021. In January 2020, plaintiff reported poorer sleep but happy mood and normal energy, and had transitioned his personal training work online from Connecticut to Montana. R. 340. In October 2020, he was feeling

---

[3] Plaintiff does not assert any claim of error relating to physical impairments.

"his yearly seasonal moodiness and decrease in energy level," an increase in anxiety, and more sleep but still did not feel rested. R. 331. In January 2021, after he returned to Connecticut, he reported via telehealth that he totaled his car but nonetheless reported optimal focus. R. 328. In March 2021, his focus was good but he was having trouble staying asleep. R. 325. In May 2021, he had bought a car and was planning to return to Montana. R. 321-22.

The March and May 2021 notes from Bridger are somewhat more optimistic than notes of treatment with Michael Bloch, M.D., in Connecticut during that same period. During intake with Dr. Bloch in March 2021, plaintiff reported constant intrusive thoughts due to OCD that were reduced by alcohol, exercise, and being alone and increased by hot weather and anxiety. R. 447. He also reported depressive symptoms including trouble sleeping, anhedonia, dysphoria, low energy, guilt, difficulty concentrating, and psychomotor slowing. R. 448. In May 2021 he was "doing well," R. 442, but in August 2021 he was "still down and depressed." R. 439. He began ketamine infusions in September 2021, R. 516, which did not provide quick relief. Plaintiff felt "much worse" in November and December 2021 after his dog died, R. 435-36; was "finally starting to feel better" in January 2022, R. 605, but just "a little better," R. 434; and then felt "somewhat improved in terms of mood and OCD" by April and June 2022 and was planning to return to Montana. R. 611, 613.

Plaintiff described his symptoms at the hearing as follows. Regarding OCD, his intrusive thought cycles are part of his daily life, R. 60, and they are "nonstop on a bad day," which is very distracting, R. 56. As for depression, he will sometimes be fine and then sometimes goes a week without dressing, showering, or brushing his teeth. R. 54. Half of his days are "bad days" except there are more bad days when there is an external stressor. R. 57. These impairments have degraded his memory, and it is impossible for him to maintain a consistent schedule. R. 62.

Plaintiff's mother's testimony was similar: she described intrusive thoughts that "permeate his life," which plaintiff cannot stop or ignore. R. 71. In the prior two years, there were times when he stayed in a bed for seven days in a row and only got up to binge eat, and there were other "manic" times when he did not sleep or eat. R. 71, 73. He has totaled multiple cars due to insufficient sleep. R. 69. He cannot predict on any given day whether he will be capable of going about his life or whether he will be crippled by intrusive thoughts. R. 72.

**4. The ALJ's decision**

In his October 2022 decision, the ALJ found that plaintiff had the following severe mental impairments: depressive disorder, bipolar disorder, obsessive compulsive disorder, and attention deficit hyperactivity disorder. R. 30. The ALJ also found considered medical evidence of hypertension and obesity but concluded that these were non-severe, particularly in light of plaintiff's testimony that he was spending his days hiking in Montana. *Id.* After finding that plaintiff's impairments did not meet or medically equal a listed impairment, R. 30-32, the ALJ then determined that plaintiff had the residual capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> The claimant can perform simple, routine, repetitive tasks and he can sustain concentration, persistence, and pace for two-hour segments. He can have occasional interaction with supervisors, occasional, non-collaborative interaction with coworkers, and brief and superficial (defined as no more than ten percent) of the workday interacting with the public. The work should involve little to no changes in duties or routines and the work should not require independent judgment (e.g. no setting duties or schedules for others and no responsibility for the safety of others).

R. 32-37. At Step 4, the ALJ found that the plaintiff was not capable of performing past relevant work but concluded at Step 5 based on vocational expert testimony that there were jobs that plaintiff could perform. R. 37-39. The ALJ therefore concluded that plaintiff was not disabled under the Social Security regulations.

### C. DISCUSSION

Plaintiff raises three claims of error on this appeal: (i) the ALJ failed to adequately develop the medical record; (ii) the ALJ should have adopted the conclusion of state agency consultants that plaintiff had a "marked" limitation in concentration, persistence, and pace and, consequently, should have included greater limitations in plaintiff's RFC; and (iii) the Appeals Council should have considered letters submitted by plaintiff's family members. For the reasons below, the Court finds no legal or factual error.

### 1. The record was adequately developed

Plaintiff's first claim of error is that the ALJ failed to obtain a full set of medical records. ECF 17-1 at 10-16. It is well established that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (cleaned up); 20 C.F.R. § 404.1512(b)(1) (agency must develop "complete medical history" from at least 12 months prior to application). The reverse is also true: the ALJ is not obligated to seek additional information "where there are no obvious gaps in the administrative record." *Rosa* at 79 n.5. Where a mental impairment is at issue, the ALJ has a "heightened duty" to develop the record. *See Cassandra S. v. Kijakazi*, No. 22-cv-328 (MPS)(RMS), 2023 WL 2867068, at *12 (D. Conn. Jan. 30, 2023) (collecting decisions); *Gabrielsen v. Colvin*, No. 12-cv-5694 (KMK)(PED), 2015 WL 4597548, at *4 (S.D.N.Y. July 30, 2015) (collecting decisions).

In this case, plaintiff fails to point to any missing treatment records during the relevant period. Plaintiff contends that records are missing from psychiatrists Dr. Harding and Dr. Van Deusen, and from PCP Dr. Najarian. However, Dr. Najarian's records from March 2019 through September 2021 are in the administrative record at Exhibit 3F, R. 362-430; plaintiff testified at

the hearing that there was no treatment after that date, R. 82-83; and although the ALJ left the record open post-hearing for plaintiff's counsel to check whether any records were missing, plaintiff submitted no further records from Dr. Najarian and affirmed in writing that the ALJ had "all available records," R. 316. Likewise, there are no missing records from Dr. Harding. After the hearing, plaintiff requested Dr. Harding's records, *see* R. 556, and those treatment notes (from ketamine infusions between May 2021 to January 2022) were added to the administrative record at Exhibits 11F and 12F. R. 494-610.

As for Dr. Van Deusen's records, the ALJ made reasonable efforts to obtain them, and all signs indicate that they are simply unavailable. Prior to the hearing, the ALJ directly requested records from Dr. Van Deusen and received a response in February 2022 stating "No Records Found." R. 465-67. In a June 2022 pre-hearing letter, plaintiff requested that the ALJ "issue a Subpoena Duces Tecum to each noncompliant Keeper of Records or treating physician," but did not identify any missing records in particular. R. 280. At the August 25, 2022 hearing, plaintiff's counsel noted that records were lacking from Dr. Van Deusen and the ALJ offered to issue another records request, but plaintiff's counsel said that she would request them directly and then "report back." R. 82. The ALJ left the record open for thirty days and reiterated: "If you run into any roadblocks and you need me to request the records, send a letter and I'll send out a records request." R. 83. Almost a month later, on September 20, 2022, the hearing office called plaintiff's counsel to remind her of the impending September 26 deadline to submit additional evidence. R. 314. Plaintiff's counsel then informed the ALJ via undated letter: "I am confident that we have all the available records for the claimant with the records submitted on 9/13/2022." R. 316. However, after the ALJ issued his October 12, 2022 decision, plaintiff's counsel sent a letter to the Appeals Council asking for additional time to submit medical records,

8

stating that the records had been difficult to obtain and requesting a subpoena duces tecum for that purpose. R. 317. Attached to that letter is an email by plaintiff's mother indicating that both she and plaintiff's counsel had re-attempted to get documents from Dr. Van Deusen after the hearing but received no response. R. 318.

Based on this history, the ALJ's efforts to develop the record were adequate. Decisional precedent indicates that subpoenaing records pre-hearing and leaving the administrative record open for supplementation post-hearing may contribute to a finding that the ALJ fulfilled his duty to develop the record. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 488 n.2 (2d Cir. 2012) (record was adequate where ALJ requested any additional evidence prehearing, held record open post-hearing, contacted counsel when none was received, and granted extension of time to supplement). Here, the record shows multiple unsuccessful attempts were to obtain Dr. Van Deusen's records, and plaintiff's counsel conceded post-hearing that the record included "all available records." R. 316 (emphasis added). Consequently, plaintiff cannot fairly contend on appeal that there was an obvious gap in the record that the ALJ failed to fill. *See Drake v. Astrue*, 443 F. App'x 653, 656 (2d Cir. 2011) (ALJ's duty to make "reasonable efforts" to develop record is satisfied if agency requested records and "nothing in the record suggests that the ALJ should have known that [the provider]'s response was incomplete.").

### 2. Impact of concentration, persistence, and pace findings on RFC

Plaintiff's second claim of error is that the ALJ should have adopted the opinions of agency consultants regarding plaintiff's limitations in concentration, persistence, and pace and, consequently, should have found a more restrictive RFC. ECF 17-1 at 2-5. Ability to maintain concentration, persistence, and pace is one of the "paragraph B" criteria that is used at Step 2 to determine the severity of a mental impairment and at Step 3 to determine whether the claimant

9

has a listed impairment that automatically qualifies as disabling.  *See* 20 C.F.R. § 404.1520a.  In order to meet the paragraph B criteria for listings in § 12.00, a claimant must have an extreme limitation, or two marked limitations, in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.  *See* Appendix 1 to 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listings") § 12.00.

In this case, agency consultant Miryam Welbourne, Psy.D., opined on initial review in March 2022 that the plaintiff had a "marked" limitation in concentration, persistence, and pace, R. 88-89, and concluded that plaintiff could carry out non-detailed tasks in two-hour increments, and would experience some disruption during periods of heightened stress or acute symptoms, R. 91.  The opinion of agency consultant Cory Sells, Psy.D., was essentially the same on reconsideration in April 2022.  R. 98, 100.

Although the ALJ found in September 2022 that plaintiff's limitation in concentration, persistence, and pace was "moderate," R. 31, and not "marked" as the consultants had opined, this divergence was ultimately inconsequential for two reasons.  *First*, a "marked" finding would not have resulted in a finding of disability at Step 3 because the ALJ did not find any other marked limitation, so the listing would not have been met regardless.  *See* Listings § 12.00 ("To satisfy the paragraph B criteria, your mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning.").  *Second*, regardless of the one divergence, the ALJ found the opinions of the agency consultants' to be "generally persuasive" and adopted their bottom-line conclusion that plaintiff could sustain concentration, persistence, and pace for two-hour segments on simple, routine, repetitive tasks.  R. 32.  In other words, the consultants and the ALJ ended up at the same RFC restriction, regardless of their difference in whether the limitation was "marked" or "moderate."

10

Furthermore, the thrust of plaintiff's argument does not fit the facts. Plaintiff asserts that an ALJ cannot account for limitations in concentration, persistence, or pace merely by restricting the claimant to simple, repetitive tasks – however, that is not what the ALJ did here. Not only did the ALJ limit plaintiff to simple, routine, repetitive tasks but he also expressly imposed a "concentration, persistence, and pace" restriction of two-hour segments. R. 32. The ALJ then included that restriction in his hypothetical to the vocational expert, who opined that there were jobs plaintiff could perform even with that restriction. R. 756-78. Consequently, the ALJ complied with the procedural principle cited in both parties' briefs that "an ALJ's hypothetical should explicitly incorporate any limitations in concentration, persistence, and pace." *See McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014); *cf. Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009) (finding error where ALJ's initial hypothetical question to the vocational expert referenced only "simple, repetitive work," without including limitations on concentration, persistence or pace). For all these reasons, the claim of error is unavailing.

### 3. Evidence submitted to Appeals Council

Plaintiff's final claim of error is that the Appeals Council improperly declined to consider letters submitted by plaintiff's family post-hearing. ECF 17-1 at 6-10. The regulations require the Appeals Council to review a case if, *inter alia*, it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Evidence is "new" if it has not previously been considered during the administrative process and is not cumulative of evidence already in the record. *Milano v. Apfel*, 98 F. Supp. 2d 209, 215 (D. Conn. 2000). Evidence is "material" if it is (i) relevant to the time period for which benefits were denied and (ii) raises a reasonable probability that the new

11

evidence would have influenced the Commissioner to decide the case differently. *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). When the Appeals Council fails to review a case in light of new and material evidence, the case should be remanded for reconsideration. *McIntire v. Astrue*, 809 F. Supp. 2d 13, 21 (D. Conn. 2010).

Here, plaintiff submitted letters from his mother, father, and sister dated March 18, 2023. R. 12-16. On June 20, 2023, the Appeals Counsel found no reasonable probability that this evidence would change the outcome of the ALJ's decision and so declined to consider it. R. 3. The Court finds no error in this conclusion because the letters are cumulative of information provided elsewhere in the record before the ALJ. The letters address the duration of plaintiff's impairments, which worsened over time; the inefficacy of drug treatments; his anxiety and intrusive thoughts; extended depressive episodes where plaintiff does not leave his bedroom; sleep difficulties; car crashes; lack of financial competence; and anxieties around socializing. R. 12-16. These accounts are cumulative of information already provided in the treatment records, in plaintiff's February 2022 function report, R. 229-236, and in the August 2022 hearing testimony by plaintiff and his mother, R. 51-73. Consequently, the letters are not new evidence and, even assuming they were, they are not material because there is no reasonable probability that they would change the outcome of the ALJ's decision. The Appeals Council therefore did not err in declining to consider this evidence.

### D. CONCLUSION

For the foregoing reasons, plaintiff's Motion to Remand, ECF 17, is DENIED and the Commissioner's Motion to Affirm, ECF 23, is GRANTED.

This is not a recommended ruling. The consent of the parties allows a magistrate judge to direct the entry of a judgment of the District Court in accordance with the Federal Rules of

Civil Procedure.  Appeals from this judgment can be made directly to the appropriate United States court of appeals.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

SO ORDERED, this 9th day of September, 2024, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge
